**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Chapter 11 |
| Healthcare Holdings of Florida LLC, *et al.*[1] | ) | |
| | ) | Case No. 24-21355-SMG |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' *EXPEDITED***
**MOTION TO MODIFY JOINT PLANS OF REORGANIZATION**

**(Request for Expedited Consideration)**

**(The Debtors respectfully request an expedited hearing on this Motion on June 10, 2025 at 10:00 a.m. (ET) when other proceedings are scheduled in these cases.)**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, file this motion (the "Motion"), and in support hereof respectfully state as follows:

**Background**

1.      On October 30, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Cases before the Bankruptcy Court.

---

[1] The Debtors and last four digits of their tax identification numbers are: (i) Healthcare Holdings of Florida LLC (6887); (ii) Healthcare Holdings 9 LLC (3633); (iii) HHMA Holdings LLC (3691); (iv) HHMA LLC (3901); (v) Able Palms Holdings, LLC (9363); (vi) Able Palms Home and Health Care Services, Inc. (3931); (vii) Home Care Resources Holdings, LLC (1385); (viii) Home Care Resources Home Health Agency, LLC (0617); (ix) CWGL Holdings, LLC (1945), (x) Senior Nannies Holdings, LLC (5172), (xi) Senior Nannies Management Services, LLC (5336); (xii) SN Home Healthcare, LLC (9996); (xiii) Senior Nannies Home Care Services, LLC (8991); and (xiv) Senior Advantages Assisted Living Placement Services, LLC (1293). The mailing address of the Debtors is 3313 West Commercial Boulevard, Suite 130, Fort Lauderdale, Florida 33309.

2. On April 17, 2025, the Debtors submitted that certain *Debtors' Expedited Motion for Entry of an Order (I) Conditionally Approving Debtors' Combined Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Proposed Joint Chapter 11 Plans of Each of Healthcare Holdings of Florida, LLC and its Debtor Subsidiaries and CWGL Holdings, LLC and its Debtor Subsidiaries, and (III) Granting Related Relief* [Docket No. 210] (the "Scheduling Motion"). On April 24, 2025, after an April 23, 2025 hearing, the Court entered an order [Docket No. 231] (the "Scheduling Order"), granting the Scheduling Motion and scheduling a combined hearing (the "Combined Hearing") to consider final approval of the Disclosure Statement and confirmation of the CWGL Plan and HHF Plan.[2]

3. The Debtors, consistent with the Scheduling Order, solicited votes to accept or reject the Plans and provided parties in interest with notice of the Combined Hearing and the deadline to object to final approval of the Disclosure Statement and confirmation of the Plans as June 3, 2025 at 4:00 p.m. (ET) (the "Objection Deadline"). The Debtors have negotiated in good faith with parties in interest to minimize objections and agreed to extend the objection deadline of the Office of the United States Trustee to June 7, 2025. *See* Docket Nos. 261, 262.

4. This Motion represents the culmination of the Debtors' good faith negotiations with parties in interest, and specifically the Office of the United States Trustee, and is being submitted, *inter alia*, to modify certain provisions of the Plans in order to resolve the informal objections of the Office of the United States Trustee with respect to the Holder Release and the Exculpation

---

[2] As used herein, "HHF Plan" means the *Joint Plan of Healthcare Holdings of Florida, LLC and its Debtor Subsidiaries Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time) [Docket No. 206] and "CWGL Plan" means *Joint Plan of CWGL Holdings, LLC and its Debtor Subsidiaries Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time) [Docket No. 207]. The HHF Plan and the CWGL Plan are herein referred to collectively as the "Plans". Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms, as applicable, in the Plans.

Provisions (each as defined herein).  With the filing of this Motion and the Modifications (as defined herein) set forth herein, the Debtors have resolved all informal objections of the Office of the United States Trustee and believe the Combined Hearing will be completely uncontested.

**Relief Requested**

5.      By this Motion, the Debtors respectfully request the Court approve certain modifications to the Plans (collectively, the "Modifications" and each a "Modification"), as set forth herein, and determine that (i) the Modifications comply with section 1127 of the Bankruptcy Code, (ii) the Modifications do not adversely affect the treatment of the Holder of any Claim or Interest under the Plans, (iii) the Debtors are not required to re-solicit ballots on the Plans, as modified, and (iv) the prior acceptance of the Plans by Holders of Claims and Interests may be applied to, and used in connection with, confirmation of the Plans as modified by the Modifications.

**The Modifications**

6.      The definition of "Released Party" in Article I.A.73 of the CWGL Plan and Article I.A.66 of the HHF Plan shall be stricken in its entirety and replaced with the following language:

> "Released Party" means, collectively, each of the following in their respective capacities as such: (a) each of the Debtors in the jointly administered Chapter 11 Cases; (b) as to each such Debtor, the Estates thereof and Reorganized Debtors; (c) any Entity owned or managed by any of the Debtors; and (d) Claudia Wechter and Gary R. Loffredo as officers, managers, and equity interest holders of the Debtors.

7.      The "Holder Release" contained in Article VIII.C of each of the Plans shall be edited such that the final sentence (beginning with "For the avoidance" and ending with "any non-Debtor party.") shall be moved to the first sentence.

3

8.      A "redline" of the revised Holder Release is presented below with additions in blue and underline, deletions in red and strikethrough:

For the avoidance of doubt, other than the releases set forth in the Amazing Glove Settlement and HHF Plan Sponsor Parties Settlement, nothing in this Plan shall release, waive or otherwise limit the rights of all Persons and Entities who have held, hold, or may hold direct, independent Claims against any non-Debtor party. Notwithstanding anything contained in this Plan to the contrary, and in all respects subject to the Amazing Glove Settlement and HHF Plan Sponsor Parties Settlement, as of the Effective Date, for good and valuable consideration, each Releasing Party is deemed to have released and discharged each Released Party from any and all Causes of Action that could be brought by or on behalf of any of the Debtors or their Estates, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Cases, the Disclosure Statement, the Plans, or the Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plans, or the distribution of property under the Plans or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted actual fraud or gross negligence. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any Person or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) Reinstated with respect to, or executed to implement the Plan. For the avoidance of doubt, other than the releases set forth in the Amazing Glove Settlement and HHF Plan Sponsor Parties Settlement, nothing in this Plan shall release, waive or otherwise limit the rights of all Persons and Entities who have held, hold, or may hold direct, independent Claims against any non-Debtor party.

9.      The "Exculpation Provisions" contained in Article VIII.E of each of the Plans shall be amended as follows: (i) the clause beginning with "*provided*, *further*, that each Exculpated Party" and ending with "or in connection with, the Plan" shall be stricken, and (ii) the words "or after the Effective Date" shall be appended to the Exculpation Provisions after the words "prior to the Petition Date" and before the final period.

10.     A "redline" of the revised Exculpation Provisions is presented below with additions in blue and underline, deletions in red and strikethrough:

> The Exculpated Parties shall neither have, nor incur any liability to any Entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plans, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plans or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided*, *however*, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan;* *provided*, *further*, that the HHF Plan Sponsors and CWGL Plan Sponsors shall not be exculpated from such party's obligations under the Amazing Glove Settlement, the HHF Plan Sponsor Parties Settlement, the Plan, or any related documents or orders of the Bankruptcy Court. Notwithstanding anything herein to the contrary, nothing in the Plan or the Confirmation Order shall release, eliminate, exculpate, discharge or limit the rights and remedies that any Holder of a Claim or Interest may have against any non-Debtor person or entity for any act, omission, matter or thing that occurred prior to the Petition Date or after the Effective Date.

11.     The typographical error referencing "Intercompany Interests" in Article III.B.9 of the CWGL Plan shall be corrected to read "Intercompany Claims," consistent with the remainder of such section.

**Basis for Relief**

12.     Section 1127(a) of the Bankruptcy Code allows a plan proponent to modify a plan "at any time before confirmation," but further provides that such proponent "may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of [the Bankruptcy Code]."   Section 1127(c) provides that "[t]he proponent of the modification shall comply with the disclosure requirements of section 1125 of [the Bankruptcy Code] with respect to the plan as modified."  Generally, courts do not require notice of a modification if the modification does not adversely change a claimant's treatment.  *In re Dow Corning Corporation*, 237 B.R. 374, 379 (Bankr. E.D. Mich. 1999).

13.     Further, Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3019 provides, in relevant part:

> [A]fter a plan has been accepted and before confirmation, the plan proponent may file a modification. The modification is considered accepted by any creditor or equity security holder who has accepted it in writing. For others who have not accepted it in writing but have accepted the plan, the modification is considered accepted if, after notice and a hearing, the court finds that it does not adversely change the treatment of their claims or interests.

14.     Reasonably, courts have determined that where a modification does not materially impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.  *In re American Solar King Corp.*, 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988).  While the prior version of Bankruptcy Rule 3019 required that the modification not affect the claim of *any* creditor or the interest of *any* equity security holder who has not accepted the modification in writing, *see In re America-CV Station Group, Inc. et al.*, 56 F.4th 1302, 1311 (11th Cir. 2023), the 2024 amendments seem to indicate that the court must only

determine the modification does not adversely affect the holder of a claim or interest "who have not accepted [the modification] in writing *but have accepted the plan*."

15.     This distinction, should one exist at all, is immaterial to the instant Motion because the Modifications proposed herein do not adversely impact any Holder of a Claim or Interest under the Plans, irrespective of whether or how such Holder voted.  The Modification with respect to the definition of "Released Party" was negotiated with the Office of the United States Trustee to resolve the informal objection thereof and *contracts* the definition such that the release provisions of the Plans are more narrowly tailored.

16.     Similarly, the Modifications to the Exculpation Provisions were negotiated with the Office of the United States Trustee to resolve the informal objections thereof and are designed to (and do in fact) *narrow* the scope of the Exculpation Provisions both in substantive and temporal scope.

17.     Finally, the Modification of the Holder Release is merely a stylistic one, reordering certain sentences for clarity, and the Modification of the reference to "Intercompany Interests" is a mere typographical correction to bring the section's title into conformity with its text.

18.     Because each of the Modifications either do not affect the treatment of Holders of Claims and Interests under the Plans or provide benefits to such Holders by making the scope of the releases and Exculpation Provisions narrower, the Modifications do not adversely change the treatment of the Holder of any Claim or Interest under the Plans (irrespective of whether or how such Holder voted) and do not require re-solicitation of the Plans.

7

WHEREFORE, the Debtors respectfully request this Court enter an order, or otherwise include a provision in the order confirming the Plans to the extent the Court confirms the same at the Combined Hearing, (i) authorizing the Modifications to the Plans, (ii) determining the Modifications do not adversely affect the treatment of the Holder of any Claim or Interest under the Plans, (iii) determining the Debtors are not required to re-solicit ballots on the Plans, as modified, and (iv) ordering the prior acceptance of the Plans by Holders of Claims and Interests be applied to, and used in connection with, confirmation of the Plans as modified by the Modifications.

Dated:   June 5, 2025

Respectfully submitted,

**PACK LAW**
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500

By:   */s/ Jessey J. Krehl*
        Joseph A. Pack
        Email:  joe@packlaw.com
        Florida Bar No. 117882

        Jessey J. Krehl
        Email:  jessey@packlaw.com
        Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*